**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER WRIGHT,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:26-CV-744** |
| | : | **(JUDGE MARIANI)** |
| **LEONARD LOMBARDO, ETHAN POWELL, CHAD CALLAHAN, and MICHAEL SAMILO** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION & PROCEDURAL HISTORY

Before the Court is a partial motion to dismiss filed by defendants Leonard Lombardo, Ethan Powell, Chad Callahan, and Michael Samilo ("Defendants"). (Doc. 7). In short, plaintiff Christopher Wright ("Plaintiff") alleges in Count III of his complaint (the "Complaint") that the Defendants are individually liable under 42 U.S.C. § 1983 for conspiracy to deprive him of his Fourth Amendment rights. In Count VII, Plaintiff alleges the Defendants are also liable for common law civil conspiracy under Pennsylvania law. Defendants move to dismiss Counts III and VII and Defendant Powell moves to dismiss all claims against him for lack of personal involvement. For the reasons discussed more fully before, Defendants' partial motion to dismiss will be denied.

On March 23, 2026, Plaintiff filed a Complaint against the Defendants, asserting claims under § 1983 for unlawful seizure, excessive force, and conspiracy. (Doc. 1, ¶¶ 97-

106). The Complaint also brings state law claims for assault, battery, false imprisonment, false arrest, and civil conspiracy. (*Id.*, ¶¶ 107-120). On May 22, 2026, Defendants filed a motion to dismiss. (Doc. 7). Plaintiff filed a brief in opposition (Doc. 8) and Defendants did not submit a reply brief contesting the arguments raised by Plaintiff. The matter has been fully briefed and ripe for disposition.[1]

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following facts in his Complaint:

In 2003, Plaintiff "was in a catastrophic car accident and sustained severe injuries resulting in a traumatic brain jury, craniectomy, and cranioplasty." (Doc. 1, ¶ 15). As a result of the car accident, Plaintiff "suffered from and continues to suffer from disabilities relating to his brain and post-traumatic headaches." (*Id.*, ¶ 16). Due to his disabilities, Plaintiff "is at times limited in his ability to perform some day-to-day activities, including but not limited to concentrating and normal cognitive functions." (*Id.*, ¶ 17). Despite Plaintiff's "health conditions and limitations, he has maintained steady employment and been a productive member of society." (*Id.*, ¶ 18).

On or about April 18, 2022, Plaintiff started employment with the Lion Brewery in Wilkes Barre as a Product Technician. (*Id.*, ¶ 19). On July 8, 2022, Plaintiff was promoted to Warehouse Supervisor. (*Id.*, ¶ 20). Plaintiff's direct supervisor and Manager was Angela Harmon ("Harmon"). (*Id.*, ¶ 21).

---

1 The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367(a).

Following his promotion, Harmon informed Plaintiff "that his former indirect supervisor, Vice President of Production Jeremy Samples, spoke highly of him and believed that he was well qualified for his new position." (*Id.*, ¶ 22). From July 2022 through November 2022, Harmon advised Plaintiff "that he was doing 'great'" and Plaintiff "received praise for his performance." (*Id.*, ¶ 23). In or around Fall 2022, Plaintiff was assigned to Lion Brewery's Pittston location. (*Id.*, ¶ 24).

On or about November 16, 2022, Plaintiff "made a request to Harmon to have the day off on or about November 23, 2022, for a doctor's appointment at Johns Hopkins Hospital in Baltimore, Maryland." (*Id.*, ¶ 25). The appointment "was related to his disabilities sustained from his car accident in 2003." (*Id.*, ¶ 26). In response to Plaintiff's request for the day off, Harmon "questioned why" he "needed to report to Baltimore to attend a doctor's appointment." (*Id.*, ¶ 27). Plaintiff informed Harmon "that he suffered from brain related disabilities and post-traumatic headaches because of the 2003 car accident and that he continued to suffer from complications with the cranioplasty that required additional cranial reconstruction." (*Id.*, ¶ 28). Upon learning this information, "Harmon appeared visibly upset and displeased." (*Id.*, ¶ 29).

After Plaintiff disclosed his disabilities "and need for reasonable accommodation to Harmon, the Lion Brewery, through its agents, servants, and employees embarked upon a campaign of discrimination and retaliation against him." (*Id.*, ¶ 30). Plaintiff was terminated from his employment with the Lion Brewery on or around December 9, 2022. (*Id.*, ¶ 31). As

a result of his unlawful termination, Plaintiff filed "a lawsuit in the District Court on September 28, 2023, against Lion Brewery for violations of the Americans with Disabilities Act."[2] (*Id.*, ¶ 32).

While the litigation was pending, Plaintiff "attended the Rhythm & Wine Festival by himself on Saturday August 24, 2024." (*Id.*, ¶ 34). The festival "was held at the Moonlite Drive-In, located in West Wyoming, Luzerne County" and near Plaintiff's home. (*Id.*, ¶ 35). Prior to leaving the festival, Plaintiff "had purchased wine from some vendors and was picking it up to take home." (*Id.*, ¶ 36). While waiting in line to pick up the wine, Plaintiff "came to be standing next to Harmon." (*Id.*, ¶ 37). Plaintiff and Harmon "acknowledged each other." (*Id.*, ¶ 38). Plaintiff "then told Harmon that what she did to him was wrong and he walked away from her." (*Id.*, ¶ 39). Plaintiff "then picked up his wine from the vendor and took it to his car." (*Id.*, ¶ 40).

Plaintiff "then went to another vendor that he had purchased wine from earlier in the day, when an unidentified man got in his face and started yelling at him." (*Id.*, ¶ 41). The unidentified man said to Plaintiff, "You think you can talk like that?" and "I know where you live." (*Id.*, ¶ 42). Plaintiff "then turned to his side, and a second unidentified man was in his presence." (*Id.*, ¶ 43). Upon information and belief, "it is believed that the second

2 A Stipulation of Dismissed was entered on June 24, 2025, resolving the litigation. (Doc. 1, ¶ 33); *see Wright v. Lion Brewery, Inc.*, No. 3:23-cv-01614-KM (M.D. Pa.).

unidentified man was a Luzerne County constable and the individual or one of the individuals who contacted the Defendants in this matter."[3] (*Id.*, ¶ 44).

Plaintiff then "made his way around the second unidentified man and took his purchased wine to his car." (*Id.*, ¶ 45). On his way back to his car, Plaintiff "was approached by the second unidentified man who told him that he needed to leave." (*Id.*, ¶ 46). Plaintiff "informed the second unidentified man that he was picking up one last order of wine from a vendor that he had already paid for." (*Id.*, ¶ 47).

After picking up his last order of wine, Plaintiff "transported it to his car while being followed by the second unidentified man," causing him to "feel uncomfortable." (*Id.*, ¶ 48). Once Plaintiff reached his car, "the second unidentified man took pictures of his vehicle." (*Id.*, ¶ 49). After he loaded up his car, Plaintiff "pulled out and left the festival." (*Id.*, ¶ 50).

After leaving the festival without being arrested or detained by the unidentified constable, Plaintiff returned to his home at 636 Wyoming Avenue in Wyoming, Luzerne County.[4] (*Id.*, ¶ 52). It is approximately a two-mile drive from the Moonlite Drive-In to

---

[3] The Defendants are police officers employed by the Wyoming Area Regional Police Department ("WARPD") in Luzerne County, Pennsylvania. (Doc. 1, ¶¶ 6-12).

[4] Plaintiff alleges that, under Pennsylvania law, a constable of a borough is empowered to make a warrantless arrest of any individual who:

a. Is guilty of a breach of peace, vagrancy, riotous or disorderly conduct or drunkenness.
b. May be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens.
c. Violates any ordinance of the borough for which a fine or penalty is imposed.

(Doc. 1, ¶ 51) (citing 44 Pa. C.S.A. § 7158).

Plaintiff's house. (*Id.*, ¶ 53). Plaintiff "parked his vehicle on the side of E. Pettebone Street, facing towards Wyoming Avenue."[5] (*Id.*, ¶ 54).

Once Plaintiff parked and exited his vehicle, "a WARPD SUV pulled up behind his vehicle." (*Id.*, ¶ 56). "It is approximately 0.39 miles from the WARPD headquarters located at 475 Wyoming Avenue" to Plaintiff's house. (*Id.*, ¶ 57). Upon information and belief, Defendant Powell and Defendant Samilo exited the WARPD SUV and asked Plaintiff "Where he was coming from?", "What just happened?" and "Have you been drinking?" (*Id.*, ¶ 58). Plaintiff "explained he was accosted at the wine festival and that if he wasn't under arrest he was going home." (*Id.*, ¶ 59).

"While telling Defendant Powell this, two (2) more WARPD SUVs arrived on the scene." (*Id.*, ¶ 60). Upon information and belief, Defendant Lombardo and Defendant Callahan exited their SUVs and approached Plaintiff. (*Id.*, ¶ 61). Plaintiff "was then told that he was being 'investigated' several times by the named Defendants, (*Id.*, ¶ 62), but was "never told by the named Defendants what, if anything he had allegedly done wrong or why he was being investigated." (*Id.*, ¶ 63). Plaintiff "then again said that if he wasn't under arrest he was going to his house." (*Id.*, ¶ 64).

At this time Plaintiff "turned away from the named Defendants and attempted to walk to his house." (*Id.*, ¶ 65). He "was not armed and had no weapons of any kind on his

---

5 "E. Pettebone Street is the nearest cross street to where [Plaintiff's] house is located on Wyoming Avenue." (Doc. 1, ¶ 55).

person" and "posed no threat to the safety of the named Defendants." (*Id.*, ¶ 66). Plaintiff "made no threats toward the named Defendants," and "was by himself and in the company of no other individuals." (*Id.*, ¶¶ 67-68).

As Plaintiff "turned away and attempted to walk to his house, he was tackled to the ground and jumped on by the named Defendants." (*Id.*, ¶ 69). While the Defendants were on top of Plaintiff, "his head was being pushed into the ground." (*Id.*, ¶ 70). Plaintiff told the Defendants, "they were hurting him and asked, 'What are you doing?'" (*Id.*, ¶ 71). The Defendants then told Plaintiff, "You just fucked up; you shouldn't have done that." (*Id.*, ¶ 72). "At this time, Defendant Callahan unholstered his department issued taser and had it pressed to the to the back and temple area" of Plaintiff's head. (*Id.*, ¶ 73). Upon information and belief, Plaintiff "was then handcuffed by Defendant Samilo and put into a WARPD SUV." (*Id.*, ¶ 74). There was no warrant for Plaintiff's arrest. (*Id.*, ¶ 75).

Plaintiff was then advised "that he was being arrested for suspicion of DUI," after which he requested the Defendants "administer standard field sobriety tests," but "none were administered." (*Id.*, ¶ 76). During this incident, Plaintiff's "neighbor was standing on the side with his lawnmower watching what just transpired." (*Id.*, ¶ 77).

Plaintiff was then transported to Wilkes-Barre General Hospital ("WBGH") by Defendants Callahan and Samilo, "apparently for a blood draw, despite there being no legal basis for one." (*Id.*, ¶ 78). Plaintiff "remained handcuffed for the duration of the trip to WBGH." (*Id.*, ¶ 79). En route to WBGH when Plaintiff "asked a question about what was

going on, he was told to "Shut the fuck up" by Defendants Callahan and Samilo. (*Id.*, ¶ 80). Upon entering WBGH, Plaintiff "said that he did not understand what was happening to him," and Defendant Callahan repeatedly said that Plaintiff "was refusing the blood draw." (*Id.*, ¶¶ 81-82). Defendants Callahan and Samilo then placed Plaintiff "back into their WARPD SUV and transported him back to his house." (*Id.*, ¶ 83). Once Defendants Callahan and Samilo transported Plaintiff "back to his house, he was uncuffed and free to leave." (*Id.*, ¶ 84).

Plaintiff "was not charged with any of the following crimes following the events that occurred at the wine festival or his unlawful interaction with the named Defendants," including: (a) Harassment; (b) Disorderly Conduct; (c) Public Drunkenness; (d) Resisting Arrest; (e) Careless Driving; (f) Reckless Driving; and (g) DUI: General Impairment. (*Id.*, ¶ 85). "Despite allegedly refusing the blood draw in violation of Pennsylvania's Implied Consent law while he was unlawfully in police custody," Plaintiff "never received a letter from the Pennsylvania Department of Transportation, notifying him that his driving privilege had been suspended." (*Id.*, ¶ 86). Plaintiff "was not charged with any violation of the Pennsylvania Motor Vehicle Code or Pennsylvania Crimes Code following the events that occurred at the wine festival or his unlawful interaction with the named Defendants because there was no legal basis or probable cause to charge him with any violation of those codes." (*Id.*, ¶ 87).

Plaintiff sought medical treatment "as a result of his aforementioned unlawful interaction with the named Defendants." (*Id.*, ¶ 88). Plaintiff was diagnosed with: (a) concussion with no loss of consciousness; (b) contusion of the left half of posterior chest wall; and (c) cervical spine strain. (*Id.*, ¶ 89). "At all the time relevant, the named Defendants' actions were outrageous, malicious, willful and effected with a reckless indifference to the rights and welfare" of Plaintiff. (*Id.*, ¶ 90).

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 in Count I of the Complaint and alleges that the Defendants deprived him of his Fourth and Fourteenth Amendment rights when they unlawfully arrested and seized him without probable cause. (*Id.*, ¶¶ 91-96). In Count II, Plaintiff brings a § 1983 claim and alleges that the Defendants deprived him of his Fourth and Fourteenth Amendment rights when they unreasonably seized him and used excessive force. (*Id.*, ¶¶ 97-101). In Count III, Plaintiff brings a claim under § 1983 alleging conspiracy. (*Id.*, ¶¶ 102-106). He alleges that the Defendants, acting under color of state law, "conspired and entered into express and/or implied agreements to seize and arrest" Plaintiff "without probable cause." (*Id.*, ¶ 104). In Count IV, Plaintiff brings a claim for assault under Pennsylvania law (*Id.*, ¶¶ 107-110) and in Count V he pursues a claim for battery. (*Id.*, ¶¶ 111-114). In Count VI, Plaintiff brings claims for false arrest and false imprisonment, (*Id.*, ¶¶ 115-117) and in Count VII Plaintiff pursues a claim for civil conspiracy under Pennsylvania law. (*Id.*, ¶¶ 118-120).

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S.

at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal,* 556 U.S. 679).

## IV. ANALYSIS

Defendants move to partially dismiss the Complaint. (Doc. 7). Specifically, they claim that Count III alleging conspiracy under § 1983 and Count VII alleging common law civil conspiracy under Pennsylvania law must be dismissed as a matter of law because Plaintiff fails to plausibly allege facts supporting those claims. (Doc. 8 at 6-8). Defendants also assert that Plaintiff fails to identify any facts pertaining to Defendant Powell's personal involvement in the alleged constitutional deprivations and does not allege facts concerning his intentional conduct. (*Id.* at 8-9). Plaintiff opposes Defendants' motion. (Doc. 8).

### A. Plaintiff States a Section 1983 Conspiracy Claim.

In the Complaint, Plaintiff alleges a conspiracy to violate his federal civil rights in violation of § 1983. (Doc. 1, ¶¶ 91-101). Relevant to the instant motion, Plaintiff alleges that

Defendants entered into an express or implied agreement to seize and arrest him without probable cause in violation of his constitutional rights secured by the Fourth Amendment to the United States Constitution. (*Id.*, at ¶¶ 102-106). According to Defendants, Count III alleging conspiracy under § 1983 must be dismissed because Plaintiff did not "allege any facts relating to the period of the conspiracy or the actions taken to achieve the purpose of the conspiracy." (Doc. 8 at 7). They further claim that "Plaintiff fails to plead facts establishing the essential meeting of the minds reflecting an understanding or agreement." (*Id.*).

Plaintiff, in contrast, argues that "[n]either federal nor Pennsylvania law require a plaintiff to possess direct evidence of a conspiracy agreement, rather, both allow a conspiracy to be inferred from circumstantial evidence." (Doc. 9 at 7). Plaintiff further claims that the Complaint's detailed factual allegations "permit a reasonable inference that Defendants were acting pursuant to a common understanding of plan." (*Id.*).

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Section 1983 is not in itself a source of substantive rights, instead providing a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). "A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived

him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). For purpose of this motion, no party disputes that Defendants acted under color of state law. *See Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (holding that defendant police officers were state actors because "[t]hey were clearly invested with the power and authority of the state").

The Fourth Amendment, applicable to state and local governments by the Fourteenth Amendment, provides "[t]he right of the people to be secure in the persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons of things to be seized." U.S. Const. Amend, IV. "The Amendment protects the people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 62 (1992) (quoting U.S. Const., amend. IV.). "The Fourth Amendment is designed to protect liberty, privacy, and possessory interests against arbitrary intrusion by the government." *Showers v. Sprangler*, 182 F.3d 165, 172 (3d Cir.1999) (citations omitted).

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018)

(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). A claim for civil rights conspiracy under § 1983 also "requires that the state actors took 'concerted action' based on an 'agreement' to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020); *see also Jutrowski*, 904 F.3d at 295 ("After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, 'the rule is clear that' the plaintiff 'must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.") (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009)).

To show the existence of agreement, a plaintiff "must demonstrate that 'the state actors named as defendants in the complaint somehow reached an understanding to deny the plaintiff his rights." *Jutrowski*, 904 F.3d at 295 (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993)). In the absence of direct proof of an agreement, a plaintiff may show a "meetings of the mind" or "understanding or agreement to conspire" by circumstantial evidence, from which agreement to conspire may be inferred. *Jutrowski*, 904 F.3d at 295. "Such circumstantial evidence may include that the alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the specific parties to agreement, the period of the conspiracy, or the object of the conspiracy." *Jutrowski*, 904 F.3d at 295 (cleaned up). "Because direct evidence of conspiracies is rare, plaintiffs typically rely on circumstances inferences at the dismissal

stage."[6] *Burke v. Bachert*, 702 F. Supp. 3d 347, 364 (E.D. Pa. 2023) (citing *Capogrosso*, 558 F.3d at 184-85).

As discussed, Defendants seek dismissal of Count III alleging conspiracy under § 1983, claiming there are insufficient factual allegations supporting an inference that they took concerted action pursuant to agreement amongst themselves to deprive Plaintiff of his civil rights.[7] The Court disagrees and concludes that facts alleged the Complaint contains sufficient plausible factual allegations from which one can reasonably infer that WARPD officers Defendants Lombardo, Powell, Callahan, and Samilo acted in concert under color of state law and agreed or conspired to deprive Plaintiff of his Fourth Amendment rights. Plaintiff alleges that following his interaction with Harmon at the wine festival an unidentified constable followed him, photographed his vehicle, and communicated with law enforcement. (Doc. 1, ¶¶ 42-50). The constable did not arrest or detain Plaintiff at the festival. (*Id.*, ¶¶

---

6 Where, as here, a plaintiff brings a claim based on "an alleged conspiracy among police officers," circumstantial evidence from which one could infer the existence of an agreement to conspire "may manifest as conversations between officers about the incident, allegedly distorted stories that emerged, an awareness of conflicting stories and irregularities in the series of officials investigations into the incident." *Jutrowski*, 904 F.3d at 295 (internal citation and quotation marks omitted).

7 Defendants do not dispute for purposes of this motion that the Complaint alleges an actual underlying constitutional violation of Plaintiff's rights—an unreasonable seizure and the use of excessive force. *See Torres v. Madrid*, 592 U.S. 306 (2021) (application of physical force to the body of person with intent to restrain is Fourth Amendment seizure even if the person does not submit and is not subdued); *see also Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (holding that a seizure occurs when, "taking into account all the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.") (internal citation and quotation marks omitted); *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) ("To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable.").

50-52). After Plaintiff drove two miles home from the festival and parked his vehicle outside his home, he alleges that Defendants Powell and Samilo pulled behind his parked vehicle and were joined by Defendants Lombardo and Callahan and they proceeded to question him. (*Id.*, ¶¶ 52-64). Plaintiff alleges that none of the Defendants responded when he asked if he was under arrest or free to leave. (*Id.*). He then alleges that each of the named Defendants proceeded to act in concert to detain, seize, and handcuff him without probable cause and that Defendants Callahan and Samilo transported him to the hospital without probable cause or any legal justification. (*Id.*, ¶¶ 56-84).

Thus, despite Defendants' arguments to contrary, the Court finds the Complaint alleges detailed and specific sequences of events showing that each of the named Defendants acted in concert to deprive Plaintiff of his civil rights under the Fourth Amendment by arresting and seizing him without probable cause. (Doc. 1, ¶¶ 42-65, 74-87, 92-96). The facts and circumstances alleged by Plaintiff make it more than reasonable to infer an implied agreement between each of the Defendants—before the fact[8]—to act in concert to deprive Plaintiff of his constitutional rights by unreasonably seizing him without probable cause. Accepting the Plaintiff's allegations as true, as it must, the Complaint factual allegations paint a picture of state actors acting in concert to use their polices powers in an arbitrary way to deprive Plaintiff of his constitutional rights without any lawful

[8] *See Jutrowski*, 904 F.3d at 295-96 (noting that plaintiff alleged a § 1983 civil rights conspiracy "before the fact" and "claims of a conspiracy after the fact.").

justification. *See Showers*, 182 F.3d at 172 (the Fourth Amendment "is designed to protect liberty, privacy, and possessory interests against arbitrary intrusion by the government."). Because Plaintiff's factual allegations make it reasonable to infer each of the Defendants reached a collective meeting of the minds and implicitly agreed to deprive Plaintiff of his constitutional rights under the Fourth Amendment, Defendants' partial motion to dismiss Count III alleging civil rights conspiracy under § 1983 will be denied.[9] *See Burke*, 702 F. Supp. 3d at 364 (granting in part and denying in part defendants' motion to dismiss § 1983 civil rights conspiracy); *see also Miller v. Goggin*, 672 F. Supp. 3d 14, 54-55 (E.D. Pa. 2023) ("At this stage of the litigation and viewing these facts in the light most favorable to Plaintiff, the Court is satisfied that these allegations support a claim for civil rights conspiracy.") (collecting cases); *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 387 (E.D. Pa. 2018) (denying motion to dismiss § 1983 civil rights conspiracy claim).

## B. <u>Plaintiff States a Common Law Civil Conspiracy Claim Under Pennsylvania Law.</u>

Defendants next move to dismiss Count VII alleging common law civil conspiracy under Pennsylvania law for the same reasons they argue in support of their motion to dismiss Count III alleging civil rights conspiracy under § 1983. Specifically, that "Plaintiff

---

9 Although Defendants claim that Plaintiff fails to "allege any facts relating to the period of the conspiracy or the actions taken to achieve the purpose of the conspiracy," that is incorrect. (Doc. 8 at 7) Plaintiff alleges that each of the Defendants acted in concert "to achieve the purpose of the conspiracy" and the Complaint's factual allegations are sufficient for Defendants to reasonably infer the "period of the conspiracy." (Doc. 1, ¶¶ 43-90).

fails to plead facts establishing the essential meetings of the minds reflecting an understanding or agreement, plotted, planned, and conspired together."[10] (Doc. 8 at 7).

To prove a civil conspiracy under Pennsylvania law, "it must be shown that two of more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means."[11] *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466 (1979). "Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Id.* "This unlawful intent must be absent justification." *Id.* Moreover, a conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design . . . and actual legal damage results." *Id.* "Pennsylvania courts have held that a civil conspiracy may be proven by circumstantial evidence, provided that evidence is full, clear and satisfactory." *Rumbaugh v. Beck*, 601 A.2d 319, 327 (Pa. Super. 1991) (collecting cases); *see also Win & Son, Inc. v. City of Philadelphia*, 178 F. Supp. 3d 234, 246 (E.D. Pa. 2016) ("A conspiracy must often be proved by circumstantial evidence.") (citing *Thompson Coal Co.*, 488 Pa. at 212 n.9)).

---

10 In the brief in support of their partial motion to dismiss Counts III and VII, Defendants do not distinguish between a civil rights conspiracy claim under § 1983 and a common law civil conspiracy claim under Pennsylvania law. (Doc. 8 at 6-8).

11 In Pennsylvania, "a civil conspiracy claim requires allegation sufficient to state an independent cause of action underlying the conspiracy." *Saropolis v. Tereshko*, 625 Fed. App'x 594, 589 (3d Cir. 2016) (nonprecedential) (citing *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000)). Here, Plaintiff alleges state law claims for battery, assault, false arrest, and false imprisonment which are independent causes of action underlying his common law civil conspiracy claim. (Doc. 1, ¶¶ 107-117).

Like the § 1983 civil rights conspiracy claim, the Court finds the plausible factual allegations in the Complaint make it reasonable to infer that each of the named Defendants acted in concert and "combined or agreed do an unlawful act or to do and otherwise lawful act by unlawful means." *Thompson Coal Co.*, 488 Pa. at 211. Because Plaintiff's detailed factual allegations make it reasonable to infer each of the Defendants acted in concert and implicitly agreed to assault, batter, and/or falsely imprison or arrest Plaintiff, Defendants' motion to dismiss Count VII alleging common law civil conspiracy under Pennsylvania law will be denied.

**C. <u>The Complaint Alleges Sufficient Facts Showing Defendant Powell Was Personally Involved in the Deprivation of Plaintiff's Fourth Amendment Rights</u>.**

Finally, Defendant Powell seeks dismissal of all claims against him, arguing that the Complaint fails to identify any facts pertaining to his personal involvement and does not allege any intentional conduct on his part. (Doc. 8 at 8-9). The Court disagrees.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1998). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* "Allegations of participation or actual knowledge, however, must be made with appropriate particularity." *Id.* (citations omitted).

Plaintiff alleges in the Complaint, which the Court must accept as true, particular facts showing Defendant Powell's personal involvement in the alleged deprivation of his Fourth Amendment rights. Plaintiff alleges that, upon arriving at his house following the

wine festival, Defendant Powell along with Defendant Samilo exited their WARPD SUV and began asking him questions, including "Have you been drinking," and "What just happened?", in apparent reference to his recent interaction with Harmon at the wine festival. (Doc. 1, ¶ 58). Plaintiff further alleges that each of the named Defendants, including Defendants Powell, then proceeded to participate together to use excessive force against him to effectuate an unreasonable arrest without probable cause.[12] (*Id.*, ¶¶ 63-72).

The allegations against Defendant Powell, though less particularized than the allegations against the other Defendants, are sufficient at the motion to dismiss and put Defendant Powell on notice of the nature and basis of the claims against him. *See Wright*, 229 F. Supp. 3d at 338 (denying Rule 12(b)(6) motion to dismiss based on lack of personal involvement and noting the plaintiff "will ultimately have to prove that each individual defendant violated his constitutional rights to survive summary judgment"). Accordingly, Defendant Powell's motion to dismiss based on his lack of personal involvement will be denied.

---

[12] This is not a case where the Complaint relies on "generic references to 'all defendants.'" *Wright*, 229 F. Supp. 3d at 338. Rather, there are "specific allegations" or "at the very least inferences can be drawn based on the current allegations," that Defendants Powell was personally involved in the deprivation of Plaintiff's civil rights and acted intentionally. *Id.*

## V. CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge